GORDON (SUNDAY v.). See Case No. 13,-616.

GORDON (UNITED STATES v.). See Cases Nos. 15,231–15,234a.

GORDON (VIRGINIA v.). See Case No. 16,-961.

GORE, The (DICKENSON v.). See Case No. 3,893.

---

## Case No. 5,622.

### The GORGAS.

[10 Ben. 541.][1]

District Court, S. D. New York. Aug., 1879.

COLLISION — TUG AND TOW — LIGHTS ON CANAL-BOAT IN TOW—INSPECTOR'S RULES—FERRY.

1. The tug G. having towed three canal-boats out of a slip at Jersey City into the river, all three on her port hand in the neighborhood of the ferry from Desbrosses street, in order to take one of the boats, the N., on the other side, her lines were slacked and she was dropped back till her stem was ten or fifteen feet from the sterns of the other two boats, and a line was made fast from her to one of the other boats. In this position the N. was run into by a ferry-boat crossing from New York to Jersey City. When the approach of the ferry-boat was seen, the master of the N. hailed the tug to go ahead, but the hail was not heard. The master of one of the other boats went forward abreast of the pilot-house of the tug and spoke to the master of the tug, but he failed to start his boat ahead in time to get the N. out of the way of the ferry-boat, and the owner of the N. filed a libel against the tug to recover the damages sustained by the N. The N. had no light on her at the time of the collision, and was not seen by the ferry-boat in time: *Held*, that the place chosen by the tug in which to shift the canal-boat was not well chosen, being in the track of the ferry-boat, and that the master of the tug was bound to greater vigilance, therefore.

2. The master of the tug was not as vigilant as he should have been, in that he did not see the approach of the ferry-boat in time, and did not start ahead with his tug when warned to do so.

3. The tug was liable for the damages to the boat.

4. It seems that the rules of the inspectors throw the duty of seeing that a boat in tow has a light upon the steam-tug and not on the boat, and that there is no such duty on the part of the boat to have a light that the failure to have one constitutes negligence on the part of the boat as regards the tug.

In admiralty.

E. D. McCarthy, for libellant.
W. R. Beebe, for claimant.

CHOATE, District Judge. This is a libel to recover for an injury sustained by libellant's canal-boat, the Charles J. Norton, by a collision with the ferry-boat New York, on the evening of the 11th of May, 1877, while

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

the canal-boat was in tow of the Gorgas. The libellant's boat with two other canal-boats, the O'Donnell and the Mary Dee, were lying together at a pier near the foot of Morgan street, Jersey City. These boats employed the tug Gorgas to tow them to Port Johnson. The tug came into the slip where they were lying lashed together, put her line on the middle boat, the O'Donnell, and backed out into the river, drawing them after her. When she had the canal-boats clear of the piers she came along side of the Mary Dee, thus placing all three boats on her port side, the libellant's boat being outside. The tug and tow were then heading nearly across the river, but a little down stream, and were from two hundred and fifty to five hundred yards from the line of the piers. The tide was ebb, setting directly down the river. The night was starlight and clear, with very little wind. The three canal boats were light. Having got the tow in this position the tug came to a standstill in the water, and ordered the libellant's boat to cast off her lines and fall back for the purpose of taking her up on the starboard side. The lines were slackened and the libellant's boat fell back and her lines were passed on to the Mary Dee preparatory to her being taken up on the starboard side of the tug. As soon as she was far enough back to be well clear of the other boats, her stem being ten or fifteen feet from the sterns of the other boats, the line was made fast, connecting her with the Mary Dee. And at this stage of the manoeuvre of shifting her from one side of the tug to the other, the ferry-boat New York, bound from her slip at the foot of Desbrosses street, New York, to her slip in Jersey City, which is a short distance below Morgan street, came in collision with her port side, about two feet from the stern, striking a glancing blow and breaking in some of her upper planks. The tug had her lights set and burning, as required by statute of a tug having other vessels in tow. There was no light on the libellant's boat.

It is alleged in the libel, as negligence on the part of the tug; that she left the canal-boat helpless and motionless for several minutes in the track of this ferry-boat, and that when libellant saw the ferry-boat coming upon a course likely to cause a collision, he called out to the master of the tug to go ahead; but he neglected to do so. The answer does not directly meet and reply to this charge of negligence in not responding to the call of the libellant to go ahead, but alleges that the tug and tow at the time of the collision had been lying dead in the water for about ten minutes; that the collision happened through no negligence or fault of the tug, but through the fault and negligence of the ferry-boat in not avoiding the canal-boat, in not having a careful lookout and pilot, and in not changing her course so as to avoid the canal-boat, and in not stopping and backing, and through the fault of the canal-boat "in having no lights set, as required by law."

The evidence shows that while the ferry-boat was still at a considerable distance, those on the canal-boats observed that she was making such a course in relation to their position, that a collision with the libellant's boat was likely to take place, and that first the libellant from his boat and then the master of the O'Donnell shouted out to the master of the tug to go ahead, that the ferry-boat was running into them. The libellant's boat was so far astern that it is probable that his call was not heard, but the master of the O'Donnell ran forward on his boat to a point directly opposite to the pilot-house of the Gorgas and spoke to the master. His call was certainly heard. The master of the tug swears that he rang to go ahead immediately on hearing this call. On this point the testimony is conflicting. I think the preponderance of the testimony is, that he did not start his boat ahead as quickly as he could; that he had time enough to move her forward and thereby to have avoided the collision. In his testimony he suggests that he did not know, when he first heard the shout, whether the libellant's boat was made fast or not. The inference would be that any delay was excusable, because he had no assurance that if he went ahead he might not leave her behind in the river. There is nothing of this in the answer, and it seems to be an after-thought. On another point, the master of the tug is, I think, shown by the testimony to be in error. He places the tow a little below the ferry-slip, at the time of the collision. Other witnesses place it a little above, which is far more probable, considering the state of the tide. The ferry-boat, in making her slip, would naturally have kept a little above the slip as she approached it, to counteract the effect of the tide. The evidence shows that the tow stopped above the ferry-slip, and in executing this manoeuvre of shifting the libellant's boat, the tug and tow were slowly drifting down the river across the track of the ferry-boat. Upon the whole the testimony of the pilot of the tug seems to me less to be relied on than that of libellant's witnesses, some of whom are disinterested. The fact that he had not observed what was evident to those on the tow, the movements and course of the ferry-boat threatening a collision, shows inattention on his part. It is argued that he might assume that on such a clear night the ferry-boat would see the canal-boat and keep out of her way. Up to a certain point, undoubtedly, one vessel may and must assume that another approaching her sees her and will observe the common rules of navigation, and may properly act on that assumption; but it is equally the duty of every vessel to observe and be ready to

take immediate action with reference to any indication that the approaching vessel is proceeding in disregard of ·those rules. It may have been negligence in the ferry-boat not to see and keep out of the way of the canal-boat; but it was the duty ·of the tug to keep her under such observation that if the ferry-boat gave any indications by her movements of not seeing ·her or of not keeping out of her way, she could take immediate measures for the protection of her tow. The testimony of the deck-hand on the tug who, before the collision, went aft to take the line of the libellant's boat when she should come up on the starboard side, does not greatly aid that of the master. He was not in a position to see the approach of the ferry-boat, and was busy with his duties there. The position chosen by the master of the tug for shifting this canal-boat was not well chosen. It was too nearly in the track of the ferry-boat, of which he must be presumed to have had notice, especially as the canal-boat had no light, of which also he had notice. The situation imposed on him the duty of great vigilance in so executing the manoeuvre, which was undoubtedly a proper one, if executed in a proper place and manner, that the canal-boats should not be run down while lying motionless and helpless in the river. On the whole, therefore, I think the point is fairly made out against the tug, that she was negligent in leaving the libellant's boat helpless and motionless in the river, and in not going ahead and avoiding a threatened collision with the ferry-boat, ·of which the tug had sufficient notice, and which, if the notice given had been insufficient, she was bound to have observed.

It is no answer to this charge that the canal-boat had no light. There is no statute requiring her to have a light, and the rules of the supervising inspectors referred to in argument were not put in evidence, and if they are considered in the case, they seem to impose the duty of setting lights on vessels in tow upon the tug rather than upon the canal-boat. It is very probable that if there had been a light on libellant's boat, the ferry-boat would have seen it and kept out of her way. But it seems not to be such a duty on the part of a canal-boat, in the absence of a special requirement. as to make the failure to set a light in such a case negligence on her part towards the tug. The tug violated a plain duty towards the canal-boat in not keeping her out of the danger threatened, and this seems to me to have been. as between these two vessels, the immediate cause of the collision. The tug had notice of the absence of a light on her, and if that made her situation more hazardous, it only increased the obligation of the tug towards her. Decree for libellant, with costs, and reference to compute damages.

[For a hearing on exceptions to the commissioner's report, see Case No. 5,623.]